**Clarence JENSEN, Appellant,**

v.

**Jason COVINGTON, Appellee.**

No. 10–06–00159–CV.

Court of Appeals of Texas, Waco.

Aug. 8, 2007.

Rehearing Overruled Sept. 18, 2007.

Tom D. Rorie, Nacogdoches, for appellant.

Thomas R. McLeroy, Jr., Center, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Clarence Jensen sued Jason Covington to compel him to convey the interest Covington had acquired as the purchaser in a tax sale of Jensen's real property. Jensen contended that he had tendered, or attempted to tender, the price required to redeem the property under section 34.21 of the Texas Tax Code, but that Covington thwarted his redemption attempt. Jensen requested a declaratory judgment that (1) his tender of the redemption price was sufficient, (2) determined the redemption price, and (3) required Covington to execute a deed conveying the property to Jensen. Covington claimed that Jensen did not make an effective tender in a timely manner. After a bench trial, the court ruled that Jensen had not redeemed the property and entered a take-nothing judgment. Presenting thirteen issues, Jensen appeals. We will reverse and remand.

### Factual Background and Evidence

Jensen, a retiree, inherited the real property at issue (a house) from his mother. The ad valorem taxes were overdue, and the local taxing authorities obtained a judgment on the delinquencies. The property was sold at a tax sale to the Center ISD as trustee on June 4, 2003, and the Sheriff's Tax Deed was recorded on August 14, 2003. Jensen had 180 days—until February 10, 2004—to redeem the property. *See* TEX. TAX CODE ANN. § 34.21(e)(1) (Vernon Supp.2006). On September 16, 2003, Center ISD sold the property to Covington.

Having redeemed the property once before, Jensen was familiar with the redemption process, but he had miscalculated his 180–day deadline by a few days. Around 3:00 p.m. on February 10, 2004, while in Richardson, Texas, Jensen contacted a

Center lawyer, Ken Muckelroy, who determined that the redemption deadline was February 10. Jensen, working from a Kinko's copy center in Richardson, hurriedly borrowed money to cover the redemption price and had the funds wired to Muckelroy. From the available information, Muckelroy estimated the redemption price amount and placed it in his escrow account. His secretary, Susan Livingston, hand-delivered a letter to Covington, who ran a lumber yard about a half-mile from Muckelroy's office. The letter, which was also sent by certified mail, states:

> Please be advised that my client, Clarence Jensen, has elected to exercise his right of redemption, as to the above-referenced property, according to Section 34.21 of the Property Tax Code. Mr. Jensen hereby requests a written itemization of all amounts spent by you in costs on the property. "Costs" includes those items defined in Section 34.21(i) of the Property Tax Code. Please forward the itemization to my office.

> You may come to my office to execute a Quitclaim Deed; to confirm the amount necessary for redemption; and to pick up a check, drawn on my escrow account, for your proceeds. If you wish to handle this process in a different manner, please let me know.

Livingston took the letter in an envelope to Covington at his lumber yard, along with an extra copy that was intended for him to sign as an acknowledgement of receipt. Livingston said that she handed the envelope and the extra copy to Covington and that he glanced over it and asked if Muckelroy was in the office. Livingston responded that he was in the office, and Covington handed the letter back to her without signing it. She returned to the office and reported to Muckelroy what had happened. Because Covington had asked

if Muckelroy was in the office, she assumed Covington would be coming to the office.

Covington admitted that Livingston brought him an envelope but denied that she gave him a copy and asked him to sign it. He said that he told her that he would "come by and see Ken later." Covington testified that he did not open the envelope, read the letter, inquire why Muckelroy's employee had hand-delivered correspondence to him, or call Muckelroy. He claimed he was busy running his lumber yard, though he promptly left at 5:00 p.m. that day. His explanation for not reading the letter or inquiring about the hand-delivery was that he assumed the subject matter concerned a 1997 transaction in which Muckelroy had represented him.

Muckelroy waited at his office until approximately 6:30 p.m., but Covington never came. Muckelroy called Covington's home twice and left a message. While waiting, Muckelroy had Livingston send the letter to Covington by fax at 5:49 p.m. with a fax cover sheet that stated:

> Ken just wanted to make it clear to you that Mr. Jensen has deposited more than enough money in my [sic] trust account to pay you, but we do not know the exact amount of the redemption until we hear from you as to the [sic] your expenses. Ken will be in the office until 6:00 P.M. Thanks.

Despite the hand delivery and the fax, Covington never contacted Muckelroy on February 10. The next day, Muckelroy called Covington's business twice but was unable to speak to him. He also went to Covington's business to speak with him, but after he identified himself, the employee inquired within and returned to tell Muckelroy that Covington was not there. Muckelroy next drove to Covington's residence and left with Covington's wife a quitclaim deed and a check from Muckel-

roy's escrow account payable to Covington in the amount of $45,625.00. Muckelroy testified that Mrs. Covington's wife accepted the check and quitclaim deed and told him it would not be necessary to pay the county tax assessor-collector. Mrs. Covington disputed Muckelroy's account, denying that she understood the purpose of Muckelroy's visit and saying that she laid aside the documents until Covington came home. Finally, Muckelroy sent a February 11 letter by fax to Covington, stating in pertinent part:

On the afternoon of February 10, 2004, my secretary, Susan Livingston, hand delivered Mr. Clarence Jensen's notice of redemption to you, and you told her that you would come to my office and discuss this matter. I waited at my office for you until after 6:30 p.m. before calling your home and leaving a second message. I have also placed two calls for you today.

Muckelroy said that he never made a payment to the tax-assessor collector because he never got an itemization of Covington's costs and because he believed that Mrs. Covington had accepted his check as payment of the redemption amount. Covington testified that he had paid taxes on the property and he produced receipts showing his maintenance costs. He admitted that, as of February 10, he had sufficient records of his expenses as of that date so that he could have provided Muckelroy an itemization if he had chosen to do so.

On February 12, Covington's attorney returned the check to Muckelroy with a letter stating that the tender was unacceptable to Covington and insufficient to redeem the property because it was tardy, conditional, and "not in the form which would discharge the underlying obligation under the Texas Business and Commerce Code."

## Applicable Law

Section 34.21 of the Texas Tax Code controls this case. It provides in pertinent part:

(a) The owner of real property sold at a tax sale to a purchaser other than a taxing unit that was used as the residence homestead of the owner or that was land designated for agricultural use when the suit or the application for the warrant was filed, or the owner of a mineral interest sold at a tax sale to a purchaser other than a taxing unit, may redeem the property on or before the second anniversary of the date on which the purchaser's deed is filed for record by paying the purchaser the amount the purchaser bid for the property, the amount of the deed recording fee, and the amount paid by the purchaser as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total if the property is redeemed during the first year of the redemption period or 50 percent of the aggregate total if the property is redeemed during the second year of the redemption period.

. . .

(e) The owner of real property sold at a tax sale other than property that was used as the residence homestead of the owner or that was land designated for agricultural use when the suit or the application for the warrant was filed, or that is a mineral interest, may redeem the property in the same manner and by paying the same amounts as prescribed by Subsection (a), (b), (c), or (d), as applicable, except that:

(1) the owner's right of redemption may be exercised not later than the 180th day following the date on which the purchaser's or taxing unit's deed is filed for record; and

(2) the redemption premium payable by the owner to a purchaser other than a taxing unit may not exceed 25 percent.

(f) If the owner of the real property makes an affidavit that the owner has made diligent search in the county in which the property is located for the purchaser at the tax sale or for the purchaser at resale, and has failed to find the purchaser, that the purchaser is not a resident of the county in which the property is located, that the owner and the purchaser cannot agree on the amount of redemption money due, or that the purchaser refuses to give the owner a quitclaim deed to the property, the owner may redeem the land by paying the required amount as prescribed by this section to the assessor-collector for the county in which the property described has been redeemed. The assessor-collector receiving the payment shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed. The assessor-collector shall on demand pay the money received by the assessor-collector to the purchaser.

. . .

(i) The owner of property who is entitled to redeem the property under this section may request that the purchaser of the property, or the taxing unit to which the property was bid off, provide that owner a written itemization of all amounts spent by the purchaser or taxing unit in costs on the property. The owner must make the request in writing and send the request to the purchaser at the address shown for the purchaser in the purchaser's deed for the property, or to the business address of the collector for the taxing unit, as applicable. The

purchaser or the collector shall itemize all amounts spent on the property in costs and deliver the itemization in writing to the owner not later than the 10th day after the date the written request is received. Delivery of the itemization to the owner may be made by depositing the document in the United States mail, postage prepaid, addressed to the owner at the address provided in the owner's written request. Only those amounts included in the itemization provided to the owner may be allowed as costs for purposes of redemption.

. . .

Tex. Tax Code Ann. § 34.21.

 Jensen, as the property owner, had the burden to prove payment or tender of redemption money to Covington, the purchaser of the property, within the 180–day redemption period. *See Burkholder v. Klein ISD*, 897 S.W.2d 417, 420 (Tex.App.-Corpus Christi 1995, no writ). We construe redemption statutes liberally in favor of the right of redemption. *See ABN AMRO Mortg. Group v. TCB Farm & Ranch Land Investments*, 200 S.W.3d 774, 780 (Tex.App.-Fort Worth 2006, no pet.); *UMLIC VP LLC v. T&M Sales & Env. Sys's.*, 176 S.W.3d 595, 607 (Tex.App.-Corpus Christi 2005, pet. ref'd); *Rogers v. Yarborough*, 923 S.W.2d 667, 669 (Tex. App.-Tyler 1996, no writ); *Jackson v. Maddox*, 53 Tex.Civ.App. 478, 117 S.W. 185, 185 (1909, no writ) (quoting *Dubois v. Hepburn*, 35 U.S. (10 Pet.) 1, 9 L.Ed. 325 (1836)). Additionally, an owner seeking to redeem property must only substantially comply with the redemption statute, as the enactment of the statute reflects the public policy in favor of redemption. *See Macha v. Carameros*, 674 S.W.2d 491, 493 (Tex. App.-El Paso 1984, no writ). A purchaser at a tax sale buys with knowledge of the

statutory right of redemption.[1] *ABN,* 200 S.W.3d at 780.

## Analysis

■ The trial court filed findings of fact and conclusions of law. Findings in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). We review the trial court's conclusions of law de novo. *Smith v. Smith,* 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

### *Redemption Price*

■ The trial court made a finding that the redemption price was $45,625.00. In Jensen's first four issues, he challenges the evidentiary sufficiency of the $45,625.00 finding.[2]

Section 34.21 provides that an owner desiring to redeem his property must pay the purchaser (1) the amount the purchaser paid for the property at the tax sale; (2) the deed recording fee; (3) the amount paid by the purchaser as taxes, penalties, and costs on the property; *and* (4) a redemption premium of 25% of the aggregate total. *See* TEX. TAX CODE ANN. § 34.21(a); *Leach v. Conner,* 2003 WL 22860911, at *5 (Tex.App.-Corpus Christi Dec.4, 2003, no pet.) (mem.op.). Costs include the purchaser's costs in maintaining, preserving, and safekeeping the property, including property insurance, repairs, and maintenance. TEX. TAX CODE ANN. § 34.21(g)(2).

■■ It is undisputed that Covington's tax resale purchase price was $36,500.00. The redemption price found by the trial court, $45,625.00, is exactly that purchase price plus 25% of it. But Covington testified that he had paid taxes on the property and paid for yard maintenance (mowing and tree trimming), even offering into evidence dozens of receipts for those expenses. We agree with Jensen that the trial court's finding that the redemption price was $45,625.00 is erroneous as a matter of law because it did not include Cov-

---

1. Covington's Tax Resale Deed for the property provides that it "is given expressly under any right of redemption remaining in the former owner of the property under the provisions of law...."

2. When the party that had the burden of proof at trial complains of legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.,* as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). We first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, our inquiry ends. *Id.* "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (citations omitted). In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the trial court's finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005).

When the party complaining of the factual sufficiency of the evidence had the burden of proof at trial, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Francis,* 46 S.W.3d at 242. We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

ington's taxes and costs before calculating the redemption premium.[3] The evidence conclusively establishes that an amount other than $45,625.00 is the redemption price.[4] We sustain Jensen's fourth issue.

### Timely Tender and Substantial Compliance

The trial court made findings that Jensen did not pay the redemption price to Covington before February 11, that Jensen did not unconditionally offer to pay Covington the redemption price "in current coin of the realm," and that Jensen never relinquished possession of the redemption price for a sufficient time and under circumstances to enable Covington to acquire the funds without special effort. Issues five through nine complain of the evidentiary sufficiency of those findings. The trial court's labeling of these findings as findings of fact is not controlling on appeal, and given their subject matter and that the material facts in this case are essentially undisputed, we consider these findings to be conclusions of law and will treat them as such in addressing Jensen's issues. *See Ray v. Farmers' State Bank,*

3. Covington contends that the trial court's redemption price finding was correct because Covington failed to provide Jensen with an itemization of costs and thus was not entitled to recover those costs. *See* TEX. TAX CODE ANN. § 34.21(i) ("The purchaser or the collector shall itemize all amounts spent on the property in costs and deliver the itemization in writing to the owner not later than the 10th day after the date the written request is received.... Only those amounts included in the itemization provided to the owner may be allowed as costs for purposes of redemption."). He also claims that Jensen should have paid, but failed to pay, the trial court's redemption price to the tax assessor-collector because Jensen and Covington could not agree on the amount of the redemption money due. *See id.* § 34.21(f) (providing that if "the owner and the purchaser cannot agree on the amount of redemption money due," the owner shall make an affidavit to that effect and "may redeem the land by paying the required amount as prescribed by this section to the assessor-collector for the county in which the property described has been redeemed").

We disagree with Covington's construction of subsections 34.21(f) and (i) as applied to the facts of this case. In this case, Covington could have provided, but chose not to provide, an itemization to Jensen. Covington claims that the statutory result should be that he waived his recovery of costs (and the 25% redemption premium on them) and that Jensen should lose because he did not tender the trial court's redemption price to either Covington or to the tax assessor-collector. The statute, however, does not provide for waiver in either event of the purchaser's silence or the purchaser violates his statutory duty to provide an itemization. Nor, under the facts of this case, would we find a waiver that would only lead to Jensen's detriment. We reject Covington's strict statutory construction that disfavors the right of redemption; our task is to give a liberal construction that favors the right of redemption. Subsection 34.21(i) presumes that the purchaser has provided the mandatory cost itemization; in this case, Covington violated his statutory duty to provide Jensen with the itemization. While Jensen would be the first to admit that he should not have waited until the last day to attempt to redeem his property, the law cannot allow Covington to benefit from his refusal to provide an itemization and from giving Jensen's attorney the "runaround." Covington cannot have it both ways: he cannot assert that he had ten days to respond to Jensen, and then use those ten days to claim that Jensen's tender was untimely. Moreover, Jensen would have been required to pay section 34.21's "required amount" to the tax assessor-collector, and the required amount included Covington's costs that he would not provide Jensen. In any event, as we hold below, Jensen made a timely tender when he offered to pay the itemization costs in whatever amount they were. Because we are remanding this cause to the trial court so that the redemption can occur, we will allow the trial court to redetermine the redemption price, including whether Covington should be allowed to recover his expenses at all.

4. Alternatively, we construe the trial court's redemption price finding as a conclusion of law and hold it to be erroneous.

576 S.W.2d 607, 608 n. 1 (Tex.1979); *Snyder Communications v. Magana,* 94 S.W.3d 213, 242 n. 18 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds,* 142 S.W.3d 295 (Tex.2004).

The trial court made conclusions of law that Jensen failed to substantially comply with subsections 34.21(e) and (f), that Jensen did not timely tender payment of the redemption price to either Covington or the tax assessor-collector, and that Jensen was not entitled to redeem the property. Issues ten through thirteen assert that these conclusions are erroneous as a matter of law. In sum, issues five through thirteen boil down to two questions of law: Under the evidence in this case, did Jensen substantially comply with section 34.21, and did he, under the circumstances, make a timely tender to Covington of the redemption price? We answer both questions affirmatively.

Muckelroy, Jensen's attorney, recognized that he needed to know Covington's costs to tender the correct redemption price. His initial letter advised Covington that Jensen was exercising his redemption right and requested a cost itemization. The letter concluded: "You may come to my office to execute a Quitclaim Deed; to confirm the amount necessary for redemption; and to pick up a check, drawn on my escrow account, for your proceeds. If you wish to handle this process in a different manner, please let me know." A follow-up

fax stated that Muckelroy wanted to make it clear to Covington that Jensen has deposited more than enough money in Muckelroy's trust account to pay Covington but still needed to know Covington's expenses.

■■■■ To effect redemption, an unqualified tender of the statutory amount must occur within the statutory time period. *See Rotge v. Murphy,* 198 S.W.2d 932, 936 (Tex.Civ.App.-San Antonio 1946, writ ref'd n.r.e.). A tender is an unconditional offer by a debtor to pay another a sum not less in amount than that due on a specified debt. *Baucum v. Great Am. Ins. Co.,* 370 S.W.2d 863, 866 (Tex.1963). A valid and legal tender of money consists of the actual production of the funds to pay the debt involved. *Id.* The tenderer must relinquish possession of the funds under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire possession. *Id.* However, a formal tender is excused where the creditor has indicated he is unwilling to accept what is due in discharge of the debt. *Strickland v. Coleman,* 824 S.W.2d 188, 193 (Tex.App.-Houston [1st Dist.] 1991, no writ).

■■■■ Jensen sufficiently tendered the redemption price funds. A recent case with similar facts and issues, *Pavlow v. Jensen,* 2005 WL 3310015 (Tex.App.-Houston [14th Dist.] Dec. 8, 2005, no pet.), is instructive.[5] Muckelroy's attempts to pay

---

**5.** There, Susan Jensen, a judgment debtor, hired an attorney to assist her in satisfying a judgment that Pavlow had obtained against her. The attorney could communicate with Pavlow, who was pro se, by email and to a post office box number. The first attempt to satisfy the judgment was the attorney's letter to Pavlow advising him that Susan had deposited money into the law firm trust account and informing him that he could obtain a check from the law firm by coming to the office and signing a release. Pavlow refused in an email response, stating he would not sign a release unless the attorney mailed a check to his post office box and until the check had cleared. The attorney sent a second letter informing Pavlow that he could obtain a certified check from the court clerk if Pavlow signed a release. Again, Pavlow refused. Susan sued for injunctive and declaratory relief, and the trial court entered summary judgment in her favor, finding that she had tendered the full judgment amount but Pavlow had refused the tender. *Pavlow v. Jensen,* 2005 WL 3310015, at *1 (Tex.App.-Houston [14th Dist.] Dec. 8, 2005, no pet.).

the redemption price were reasonable efforts to relinquish possession of the funds for a sufficient time and under such circumstances to enable Covington, without special effort on his part, to acquire them because Covington provided Muckelroy no reasonable opportunity to place the funds in his hands. *Id.* at *3. Covington admitted that he told Muckelroy's secretary that he would come and see him, but the record leaves no doubt that Covington avoided Muckelroy in numerous respects. Covington did not come to Muckelroy's office, as he told Livingston he would, and he did not respond in any respect to Muckelroy's letters, faxes, phone calls, and personal visits. Moreover, Muckelroy told Covington to let him know if he wanted to handle it differently and that his trust account had sufficient funds to pay the redemption price, including Covington's costs.

Jensen's tender was not improperly conditional. He had a statutory right to request a cost itemization and a quitclaim deed, (*see* TEX. TAX CODE ANN. § 34.21(f), (i)), and where the parties' obligations are mutual and dependent, such a tender is valid because Jensen had the statutory right to impose those conditions. *See Wilson v. Klein,* 715 S.W.2d 814, 821 (Tex. App.-Austin 1986, writ ref'd n.r.e.). Nor did Jensen's tender require a special effort on Covington's part. *Pavlow,* 2005 WL 3310015, at *4. Covington admitted that he had sufficient records of his expenses to provide an itemization, their offices were a half-mile apart, and Muckelroy told Covington to let him know if he wanted to handle it differently.

Finally, we reject the conclusion and Covington's argument that Jensen's tender was insufficient because it did not offer to pay the redemption price "in current coin of the realm," which appears to be a claim that Jensen did not tender payment in cash. But the method of tender of payment is sufficient if it is made in a manner that is "current in the ordinary course of business." *Modern Aero Sales, Inc. v. Winzen Research,* 486 S.W.2d 135, 138-39 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.). Muckelroy was familiar with the usual and ordinary course of business for making payments in real estate transactions and said that a deposit of funds into a trust or escrow account was the "most common," the "overwhelming choice," and the usual and ordinary course of business for making such payments. We agree that, under the facts of this case, Jensen's method of tender of payment was sufficient. We further hold that, in the face of Covington's blatant refusal to cooperate in the redemption, Jensen, through his attorney Muckelroy, substantially and timely complied with section 34.21 by Muckelroy's February 10 letter and fax that tendered the redemption price with a check from Muckelroy's escrow account. We sustain issues five through thirteen.

On appeal, Pavlow argued that Susan did not make a legal tender because she did not relinquish possession of or produce the funds to him because they remained with her agents (her attorney and the court clerk). Because the judgment did not specify a place for payment, under the common-law rule, Susan was required to seek out Pavlow to make a tender if he could be found with reasonable diligence. *Id.* at *3 (citing *Baucum,* 370 S.W.2d at 867). The court held that Susan's attempts to pay the judgment were reasonable efforts to relinquish possession of the funds for a sufficient time and under such circumstances to enable Pavlow, without special effort on his part, to acquire them because Pavlow provided Susan no reasonable opportunity to place the funds in his hands. *Id.* The court rejected Pavlow's argument that Susan did not make a legal tender because she required him to make a "special effort" on his part to travel to either her attorney's office or the courthouse to collect the funds, finding that there was no alternative that would accomplish the concurrent goals of paying Pavlow and obtaining a release. *Id.* at *4.

Because of our disposition on the above issues, we need not rule on Jensen's remaining issues. We reverse the trial court's judgment and remand the case to the trial court for proceedings consistent with this opinion, including a redetermination of the redemption price, including whether Covington should be allowed to recover his expenses at all, and entry of such orders as necessary to require Jensen to tender the correct redemption price for a quitclaim deed executed by Covington in a manner designated by the trial court.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

Where there is certainty the judiciary should not inject uncertainty under the guise of a liberal construction of a statute or events to extend a timeframe for which the legislature gave no extension. On the last day of the redemption period, Jensen attempted to exercise the right. Both he and his lawyer knew Covington had ten days in which to assemble the information regarding expenses necessary to be included in the redemption computation. The fact that Covington could have done it easily based upon the information he had, but chose not to, is not important. The statute gave Covington ten days to do it. By inferring that he had any duty, obligation, or opportunity to respond beyond the deadline for the redemption period effectively extended the redemption to 189 days instead of 180. This we cannot properly do when the statute clearly sets the redemption deadline at 180 days, no more. The statute even has a failsafe provision in it when the buyer, who has no duty to assist the original owner to redeem the property, is uncooperative.

This problem was not created by Covington. Jensen failed to pay his taxes on time. Jensen failed to respond to the suit when sued for the taxes. Jensen failed to pay the judgment for the taxes. Jensen failed to exercise the right of redemption within the statutory deadline in time for the redemption amount to be properly calculated. I would affirm the trial court's judgment and because the majority does not, I dissent.[1]

---

1. I also do not believe there was an effective tender of the funds necessary to redeem the property.