# IN THE SUPREME COURT OF TEXAS

════════════

No. 16-0874

════════════

MICHAEL JOE SORRELL AND
SORRELL FAMILY, LTD PARTNERS, PETITIONERS,

v.

ESTATE OF BENJAMIN HARDY CARLTON, III, RESPONDENT

════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════════════════

**Argued September 12, 2018**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

By statute, an owner may redeem real property purchased at a tax sale by paying certain amounts within a prescribed period of time after the purchaser's deed is recorded.[1] The issue here is whether an owner's tender of substantially all the required money before the deadline can comply with the statute. We hold that it can and that the trial court did not abuse its discretion in concluding that the owner's tender satisfied the statute here. We affirm the judgment of the court of appeals.[2]

**I**

---

[1] TEX. TAX CODE § 34.21. All statutory references are to the Tax Code unless otherwise noted.

[2] 504 S.W.3d 379.

Benjamin Hardy Carlton, III owned a three-acre tract of land in Brazoria County. When Hardy fell sick and became unable to pay his bills, his mother-in-law, Darlene Barton, urged her daughter Karen to quit her job and care for him while Barton paid the couple's living expenses. Several taxing authorities obtained a judgment against Hardy in early 2011. He died not long afterward, and Karen was appointed administrator of his Estate. The Estate's only asset was the property, which was sold to enforce the judgment at a sheriff's sale in February 2012. Though the property was valued at $271,000 on the tax rolls, Michael Joe Sorrell and Sorrell Family, Ltd Partners ("Sorrell") successfully bid $68,000 for it. Sorrell recorded his deed on February 29.

Section 34.21 of the Tax Code provides for the redemption of real property sold at a tax sale in various circumstances. In the Estate's situation, Subsection (e) requires the presale owner to pay "the amount the purchaser bid for the property, the amount of the deed recording fee, and the amount paid by the purchaser as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total".[3] The statute provides that "the owner's right of redemption may be exercised not later than the 180th day following the date on which the purchaser's . . . deed is filed for record".[4] A redeemer can usually determine from public records the bid amount, recording fee, and taxes, interest, and penalties paid by the purchaser, but would have

---

[3] § 34.21(a); *see* § 34.21(e) ("The owner of real property sold at a tax sale other than property that was used as the residence homestead of the owner or that was land designated for agricultural use when the suit or the application for the warrant was filed, or that is a mineral interest, may redeem the property in the same manner and by paying the same amounts as prescribed by Subsection (a), (b), (c), or (d), as applicable, except that: (1) the owner's right of redemption may be exercised not later than the 180th day following the date on which the purchaser's or taxing unit's deed is filed for record; and (2) the redemption premium payable by the owner to a purchaser other than a taxing unit may not exceed 25 percent.").

[4] § 34.21(e)(1).

2

no way of knowing what other costs had been incurred without asking the purchaser. The redeemer has the right to request an itemization. There is no deadline for the request, but the purchaser has ten days after receipt to respond, by mail if he chooses.[5] The expenses must be reasonable.[6]

The Estate's deadline to redeem the home was August 27, 2012. On July 31, the Estate's attorney wrote to Sorrell, giving "formal notice that [Karen] Carlton will be redeeming" the home. "As required by law", the attorney wrote, "my client will be tendering you the amount of money paid plus the 25% redemption funds. . . . I will be sending you a proposed redemption deed and the funds in the not so distant future and certainly before the deadline."

But on August 10, Karen died tragically and unexpectedly. Though Barton was, as she testified, "pretty emotionally upset", she managed to be appointed successor Estate representative on August 21, six days before the statutory redemption deadline. That same day the Estate's attorney sent Sorrell a letter with a proposed redemption deed and two checks: one for $85,000, representing Sorrell's $68,000 bid plus 25%, and another for the $28 deed recording fee. The letter stated:

> This money and the Deed are delivered to you in TRUST. Please do not negotiate the checks until such time as the Deed has been executed by all Parties and the Deed is on its way back to my Office. . . .

---

[5] § 34.21(i) ("The owner of property who is entitled to redeem the property under this section may request that the purchaser of the property, or the taxing unit to which the property was bid off, provide that owner a written itemization of all amounts spent by the purchaser or taxing unit in costs on the property. The owner must make the request in writing and send the request to the purchaser at the address shown for the purchaser in the purchaser's deed for the property, or to the business address of the collector for the taxing unit, as applicable. The purchaser or the collector shall itemize all amounts spent on the property in costs and deliver the itemization in writing to the owner not later than the 10th day after the date the written request is received. Delivery of the itemization to the owner may be made by depositing the document in the United States mail, postage prepaid, addressed to the owner at the address provided in the owner's written request. Only those amounts included in the itemization provided to the owner may be allowed as costs for purposes of redemption.").

[6] § 34.21(g)(2)(A) ("'Costs' includes . . . the amount reasonably spent by the purchaser . . . .").

If you have any questions or any issues, please contact me immediate[ly]. The Redemption amount does include the 25% redemption fee over and above the amount paid for this tract of property at the Tax Sale.

. . .

As required by law my client is tendering you the amount of money paid plus the 25% redemption funds and your filing fees. If there are any more claimed expenses, please notify me immediately and such funds will be paid, upon review.

Ten days later—four days after the deadline for redemption—Sorrell's attorney responded that Sorrell had "paid $70,500.00 for the land[,] . . . $8,694.49 in taxes, and $682.00 in insurance", so that "[t]he proper redemption amount would have been at least $99,845.61." The attorney returned the Estate's checks. In fact, Barton was correct that Sorrell had paid only $68,000 (Sorrell mistakenly included $2,500 it had paid for another tract). Sorrell had paid the taxes a few weeks earlier, and Barton could have determined the amount from the county tax assessor–collector by the time she notified Sorrell of her intention to redeem the property. Calculating the 25% premium on the total, the correct redemption amount was $96,720.61—$11,692.61 more than the Estate had paid. The Estate had timely paid as much of the redemption amount as Barton knew about—approximately 88% of the total due—and offered to pay the rest.

The Estate sued Sorrell seeking a declaration of redemption.[7] After a bench trial, the court concluded that the Estate had "effectively exercised the right of redemption" by "ma[king] substantial compliance and tender[ing] full compensation within the redemption period." The court

---

[7] Sorrell does not complain that the Estate is not a legal entity entitled to sue in its own name because Barton, the Estate's representative, participated in the case. *See Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415 n.2 (Tex. 2000) ("[I]f the personal representative of an estate participates in the case, the judgment involving the estate may be valid." (citing *Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 699 (Tex. App.—Corpus Christi 1993, writ denied))).

directed the Estate to deposit the redemption funds into the court registry to be paid to Sorrell, and the Estate complied.

A divided court of appeals affirmed.[8] The majority reasoned that because courts have long held that "the applicable statutory provisions [must be construed] broadly in favor of redemption", substantial compliance is all the law requires.[9] "Substantial compliance", the majority continued, "is determined on a case by case basis, depending in part on the size of the amount paid timely, the size of the amount left unpaid by the [deadline], and the promptness of the late payment."[10] While the Estate's underpayment was not small or insignificant under the doctrine of *de minimis non curat lex*, the majority acknowledged,[11] the Estate had promised, within the redemption period, to pay any other amounts due.[12] Under the circumstances, the majority concluded, the evidence was sufficient to support the trial court's judgment.[13] The dissent argued that even if substantial compliance with Section 34.21 were sufficient, an issue the dissent would not have decided, there could be no substantial compliance absent an unconditional tender of the full redemption amount by the 180-day deadline.[14]

---

[8] 504 S.W.3d 379.

[9] *Id.* at 383.

[10] *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Mekhail v. Duncan-Jackson Mortuary, Inc.*, 369 S.W.3d 482, 485 (Tex. App.—Houston [1st Dist.] 2012, no pet.)).

[11] *See id.* at 384.

[12] *Id.* at 385.

[13] *Id.* at 386.

[14] *See id.* at 390–393 (Frost, C.J., dissenting) (relying on *Bluntson v. Wuensche Servs., Inc.*, 374 S.W.3d 503 (Tex. App.—Houston [14th Dist.] 2012, no pet.)).

We granted Sorrell's petition for review.[15]

## II

Sorrell argues that substantial compliance is not sufficient for redemption under Section 34.21, and even if it were, the Estate did not substantially comply with the statutory requirements.

## A

For decades, the lower courts have held that substantial compliance with statutory requirements is sufficient for redemption.[16] We have never decided the issue. We have held, just last Term, in *BankDirect Capital Finance, LLC v. Plasma Fab, LLC*, that substantial compliance is insufficient to comply with an Insurance Code provision requiring an insurance premium finance company to give ten days' notice before canceling a policy.[17] Sorrell argues that *BankDirect*, decided after the court of appeals' decision in the present case, is dispositive. We disagree.

At issue in *BankDirect* was Section 651.161(b) of the Insurance Code, which states:

> The insurance premium finance company must mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default

---

[15] 61 Tex. Sup. Ct. J. 1211 (June 1, 2018).

[16] *McKnight v. Moss*, 2017 WL 2462315, at *2 (Tex. App.—Tyler June 7, 2017, no pet.) (mem. op.); *Laguan v. Lloyd*, 493 S.W.3d 720, 723 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Haynes v. Haire*, 2014 WL 5409053, at *2 (Tex. App.—Beaumont Oct. 23, 2014, pet. denied) (mem. op.); *Khyber Holdings, LLC v. HSBC Bank USA, Nat'l Ass'n*, 2014 WL 1018195, at *3 (Tex. App.—Dallas Mar. 5, 2014, no pet.) (mem. op.); *Mekhail*, 369 S.W.3d at 485; *Gonzalez v. Razi*, 338 S.W.3d 167, 176 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Jensen v. Covington*, 234 S.W.3d 198, 203 (Tex. App.—Waco 2007, pet. denied); *Leach v. Conner*, 2003 WL 22860911, at *10 (Tex. App.—Corpus Christi Dec. 4, 2003, no pet.) (mem. op.); *Optimum Fund, L.L.C. v. Cito Int'l, Inc.*, 2001 WL 1427629, at *2 (Tex. App.—Dallas Nov. 15, 2001, pet. denied); *Macha v. Carameros*, 674 S.W.2d 491, 493 (Tex. App.—El Paso 1984, no writ); *Page v. Burk*, 582 S.W.2d 512, 514 (Tex. App.—Dallas 1979, no writ).

[17] 519 S.W.3d 76, 83 (Tex. 2017).

in payment unless the default is cured at or before the time stated in the notice. The stated time may not be earlier than the 10th day after the date the notice is mailed.[18]

The notice BankDirect sent to its insured stated a cancellation date that was nine days after the notice was mailed.[19] On the 15th day after mailing, and after a fire had destroyed the insured's property, the insured tendered to BankDirect the overdue premiums to cure its default, but the policy was not reinstated.[20] In the litigation that followed, BankDirect argued that its cancellation notice substantially complied with Section 651.161(b).[21] We held that "absent statutory language to the contrary, a statutorily imposed time period does not allow for substantial compliance."[22]

But that statute and Section 34.21 are very different. Section 651.161(b) is short, straightforward, and clearly focused on the deadline stated in the notice of default. Section 34.21 is exceedingly complex, and reading the provision as a whole, one cannot say that it is singularly focused on the redemption deadlines stated in it.[23]

Subsection (a) applies to "real property sold at a tax sale to a purchaser other than a taxing unit" that is "the residence homestead of the owner", "designated for agricultural use", or "a mineral

---

[18] TEX. INS. CODE § 651.161(b).

[19] 519 S.W.3d at 79.

[20] *Id.*

[21] *Id.* at 80.

[22] *Id.* at 83.

[23] *Cf. Mekhail v. Duncan-Jackson Mortuary, Inc.*, 369 S.W.3d 482, 486 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (explaining that courts are justified in applying the doctrine of substantial compliance to Section 34.21 because "the statute acknowledges and provides for certain ambiguity in the amount that must be paid", it "does not contain clear and precise requirements that would allow for a strict construction of its application", and "certain matters in [it] are subjective and readily subject to dispute").

7

interest".[24] The owner may redeem the property within two years of the date that the purchaser's deed is filed by paying the bid amount; the deed recording fee; taxes, penalties, interest, and costs; plus a redemption premium that varies depending on when it is paid: "25 percent of the aggregate total if the property is redeemed during the first year of the redemption period or 50 percent . . . if the property is redeemed during the second year".[25]

Subsection (b) applies to the same categories of property, but when the property is "bid off to a taxing unit . . . and has not been resold".[26] The owner still has two years from the date the deed is filed to redeem the property, but the redemption amount is calculated by different formulas depending on the manner in which the taxing unit acquired the property.[27]

Subsection (c) addresses yet another contingency: the redemption of a homestead, agricultural land, or mineral interest when the property has already been resold by the taxing unit. The redemption timeline and payment formula mirror those provided under (a).[28] If the amount paid by the owner under (c) "is less than the amount of the judgment under which the property was sold,"[29] Subsection (d) contains additional steps that the owner must take.

---

[24] § 34.21(a).

[25] *Id.*

[26] § 34.21(b).

[27] *Id.*

[28] *See* § 34.21(c).

[29] § 34.21(d).

Finally, Subsection (e) applies to property sold at a tax sale that is not a homestead, agricultural land, or a mineral interest. The owner "may redeem the property in the same manner and by paying the same amounts as prescribed by Subsection (a), (b), (c), or (d), as applicable, *except that*:"

> (1)    the owner's right of redemption may be exercised not later than the 180th day following the date on which the purchaser's or taxing unit's deed is filed for record; and

> (2)    the redemption premium payable by the owner to a purchaser other than a taxing unit may not exceed 25 percent.[30]

That is, before an owner of "other" property can determine the redemption amount, he must first wade through (a)–(d) to determine the applicable formula and then modify it by the terms of (e)(1)–(2).

In *BankDirect*, we observed that substantial compliance is "ubiquitous . . . throughout Texas law", but we thought it "particularly [im]prudent" to allow for substantial compliance with the statutory deadline in that case because the Legislature could have done so, as it has in many other statutes, and did not.[31] In this case, Legislative inaction cuts strongly the other way. Texas courts have favored redemption over forfeiture since 1909.[32] In 1932, we acknowledged this favoritism as

---

[30] § 34.21(e) (emphasis added).

[31] *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 81 (Tex. 2017).

[32] *Jackson v. Maddox*, 117 S.W. 185, 185 (Tex. App.—Fort Worth 1909, no writ) ("Statutes favoring redemption are to be liberally construed; for the sale of land for taxes is the nearest approach to tyranny that exists in a free government, and whatever tends to modify its severity is favorable to the citizen and to rights of property and to justice." (quoting section 728 of "Mr. Blackwell in his work on Tax Titles")).

9

"the recognized rule".[33] In the last century, the Legislature has amended the redemption statute dozens of times. None of the amendments has sought to change Texas courts' policy of interpreting the redemption statute to favor the redeemer. "[I]n the area of statutory construction, the doctrine of *stare decisis* has its greatest force because the Legislature can rectify a court's mistake, and if the Legislature does not do so, there is little reason for the court to reconsider whether its decision was correct."[34]

Although, as we said in *BankDirect*, substantial compliance is insufficient to satisfy a statutory deadline,[35] it may be sufficient to comply with other statutory requirements.[36] Here, the Estate paid Sorrell before the statute's deadline but did not pay the full amount that the statute requires. In light of our longstanding practice of favoring redemption over forfeiture in this property-rights context, we hold that a party's timely substantial compliance with the redemption statute's requirement to pay certain amounts may satisfy the statute's demands.

**B**

The remaining question is whether the trial court erred by concluding that the Estate substantially complied with Section 34.21(e). The record and caselaw reflect confusion about the standard of review among litigants and the lower courts. The trial court listed its substantial

---

[33] *Buckholts v. Alsup*, 56 S.W.2d 301, 305 (Tex. App.—Texarkana 1932, writ ref'd).

[34] *Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) (footnote and internal quotation marks omitted).

[35] 519 S.W.3d at 83.

[36] *See, e.g.*, *Roccaforte v. Jefferson County*, 341 S.W.3d 919, 926–927 (Tex. 2011) (holding that a party who fully complied with a statutory deadline but only substantially complied with a manner-of-service requirement had satisfied the statutory requirements).

10

compliance determination among its conclusions of law, yet on appeal Sorrell has treated the determination as a factual finding and challenged the sufficiency of the evidence to support it. The court of appeals "reject[ed] Sorrell's contention that legally and factually insufficient evidence supports the trial court's findings that the Estate substantially complied with the statutory requirements and effectively redeemed the property", but never directly confronted the standard of review.[37] At least one court of appeals has treated the issue of substantial compliance with Section 34.21 as a question of law.[38]

Whether an owner substantially complied with the requirements of Section 34.21 can be analogized to the issue whether a consent to search was voluntary under the totality of the circumstances—it "involves questions of both fact and law" and should be reviewed for abuse of discretion.[39] There may be underlying facts that are in dispute, such as whether the land was "designated for agricultural use when the suit . . . was filed" (which affects the length of the redemption period and the amount of the premium)[40] or the date on which the owner tendered payment to the purchaser. In such circumstances, "a reviewing court [should] not engage in its own

---

[37] 504 S.W.3d 379, 386.

[38] *Jensen v. Covington*, 234 S.W.3d 198, 205–206 (Tex. App.—Waco 2007, pet. denied).

[39] *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633 (Tex. 2000) ("[W]e hold that an abuse of discretion standard of review applies to a trial court's ruling on a motion to suppress evidence based upon the contention that a claimant's consent to a search was not voluntary.").

[40] § 34.21(a).

factual review, but decide[] whether the record supports the trial court's resolution of factual matters" and "defer to the trial court's factual determinations" if it does.[41]

If the record supports the trial court's factual determinations or where, as here, the underlying facts are undisputed, the reviewing court then "determines . . . whether the trial court properly applied the law to the facts in reaching its legal conclusion."[42] We have acknowledged that "[t]he doctrine of substantial compliance, though certainly familiar to the law, lacks comprehensive definition," yet we have "assume[d] that substantial compliance with a statute means compliance with its essential requirements".[43] The trial court should consider "the totality of the circumstances",[44] including the amount left unpaid, the owner's good faith and diligence in attempting to comply with the statute, and any factors that hindered the owner's full compliance.

In this case, the evidence establishes that the Estate timely tendered a redemption payment, but its checks were short by more than $11,000, or about 12% of the total due under Section 34.21(e). The unpaid funds included "the amount paid by the purchaser as taxes, penalties, interest, and costs"[45]—sums the Estate did not know. Although the Estate could have obtained the figures from the tax assessor–collector, it attempted to obtain them from Sorrell before the deadline by

---

[41] *$217,590.00 in U.S. Currency*, 18 S.W.3d at 633–634 (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

[42] *Id.* at 634.

[43] *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 402–403 (Tex. 2009).

[44] *$217,590.00 in U.S. Currency*, 18 S.W.3d at 633.

[45] § 34.21(a).

12

asking in its August 21 letter to be notified "immediately" "[i]f there are any more claimed expenses", and it promised to pay them. Section 34.21(i) gives a purchaser ten days to respond to a request for an itemization of costs, and those ten days did not expire in this case until after the 180th day of the redemption period. Although the statute did not require Sorrell to respond to the Estate's request until four days after the deadline, it did not require the Estate to request the itemization by any particular date in advance of the 180th day. While dealing with the circumstances immediately following Karen's unexpected death, the Estate timely paid all it knew then to pay and promised to promptly pay any additional amounts required.

The dissent in the court of appeals viewed the language in the Estate's August 21 letter promising to pay additional funds "upon review" as a conditional offer rendering the Estate's redemption attempt ineffective.[46] But the trial court, justifiably, could have read the language as a simple acknowledgment that the redemption statute requires that costs "spent by the purchaser [to] maintain[], preserv[e], and safekeep[] the property" be "reasonabl[e]",[47] especially in light of the evidence that the Estate was making a good-faith effort to comply with the statutory requirements.

---

[46] *See* 504 S.W.3d 379, 390 (Frost, C.J., dissenting) ("[T]he use of the term 'upon review' reflects that the Estate would pay [any missing] amounts only if, after review of the expense(s) in question, the Estate concluded that the expense(s) were part of the Redemption Amount. Therefore, any promise by the Estate to pay these expenses in the future was conditional and thus insufficient to effect a redemption." (citing *Bluntson v. Wuensche Servs., Inc.*, 374 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2012, no pet.))).

[47] § 34.21(g)(2)(A).

We hold that the trial court did not abuse its discretion in concluding that the Estate substantially complied with the requirements of Section 34.21(e). The court of appeals' judgment is

*Affirmed.*

_____

Nathan L. Hecht
Chief Justice

Opinion delivered: May 3, 2019

14