**Appellee's Motion for Rehearing Granted; Opinion of February 3, 2011 Withdrawn; Affirmed and Majority and Dissenting Opinions on Rehearing filed February 28, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-09-00617-CV

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR NEW CENTURY HOME LOAN TRUST 2006-2, Appellant**

V.

**STOCKDICK LAND COMPANY, Appellee**

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2008-60974**

## MAJORITY OPINION ON REHEARING

We grant appellee's motion for rehearing, withdraw our opinion issued on February 3, 2011, and issue this majority opinion on rehearing.

Following a tax sale of residential property, appellant Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Loan Trust 2006-2 (the "Bank"), brought a declaratory-judgment action against appellee, the tax-sale purchaser

Stockdick Land Company ("Stockdick"), seeking revival of an extinguished lien and contending (1) the former owners redeemed the property or, in the alternative, (2) pursuant to the doctrines of estoppel-by-deed and estoppel generally, the purchaser is precluded from denying the property was redeemed. The Bank and Stockdick filed competing motions for summary judgment. The trial court denied the Bank's motion and granted summary judgment in favor of Stockdick. For reasons outlined below, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The property in question is located on Yoakum Boulevard in Houston, Texas. Gordon Wittenberg and his wife Susan Wittenberg constructed a residence on the property in 2003. However, title to the property was held by Tribus, Inc., a corporation owned by the Wittenbergs. Tribus did not pay all of the property tax due for the years 2004 and 2005. During 2005, taxing authorities filed a collection suit against Tribus and mortgagee, Frost National Bank. On behalf of Tribus, Gordon Wittenberg acknowledged that the taxes were past due and stated that Tribus planned to pay under an installment plan.

On May 25, 2006, Tribus conveyed title to Susan Wittenberg.[1] Contemporaneously, the Wittenbergs refinanced the existing mortgage which had been held by Frost National Bank. The new indebtedness was secured by a promissory note in the principal amount of $650,000 in favor of New Century Mortgage Corporation, secured by a deed-of-trust lien filed for record on June 9, 2006. New Century later assigned this indebtedness and lien to the Bank. Subsequent to closure of the refinancing transaction, most of the taxes assessed for 2004 and 2005 were paid. However, either Tribus or the Wittenbergs owed $4,600 to Houston Independent School District, which had been assessed for 2005. The taxing authorities sought to recover the unpaid taxes by filing a tax suit in the 80th District Court (the "tax court").

---

[1] We refer to the Wittenbergs as owners because they are both named on the conveyance documents.

2

During February 2007, the the tax court rendered a final judgment for taxes plus penalties and interest totaling $6,847.63 and ordered foreclosure and sale. The tax court determined that the market value of the property was $659,100.[2] Other than taxing authorities, the only parties to this judgment were Tribus and Frost National Bank. The tax sale occurred on June 5, 2007. Stockdick purchased the property for $370,000. Following receipt of the amount tendered by Stockdick, past due taxes for the years 2005 and 2006 were paid. After all taxes and fees were deducted, net proceeds from the tax sale were $335,767.52. During the first week of December 2007, Stockdick entered into a redemption agreement with the Wittenbergs. The Wittenbergs agreed to remit $462,500, consisting of $370,000 (price paid by Stockdick) in cash and a promissory note for $92,500 (amount of statutory redemption premium). The usual real estate conveyance documents were executed, including a quitclaim deed to the Wittenbergs, a promissory note, vendor's lien, and deed of trust. The quitclaim deed and the deed of trust were filed in Harris County on December 10, 2007.

The Wittenbergs were required to pay all principal and interest on the promissory note by July 31, 2008. They paid $370,000 but wholly defaulted on the promissory note. Stockdick proceeded with non-judicial foreclosure and sale of the property. On October 15, 2008 (approximately three weeks before Stockdick's foreclosure and sale), the Bank filed the declaratory-judgment action which is the subject of this appeal in the 215th District Court (the "trial court"). The Bank pleaded that the Wittenbergs fulfilled statutory requisites to redeem the property. The Bank also pleaded that its lien was reinstated as a valid and subsisting mortgage and is senior and superior to Stockdick's deed-of-trust lien. Stockdick filed an answer. Subsequently, the Bank filed a traditional motion for summary judgment. Stockdick also filed a traditional motion for summary judgment, asserting the following grounds:

    (1) The Wittenbergs did not redeem the property because they failed to remit

---

[2] The tax court was required to include market value in its judgment. *See* Tex. Tax Code Ann. 33.50(a) (West 2008).

3

$92,500 in premium required under section 34.21 of the Tax Code.[3]

(2)  Stockdick maintained its superior title by reserving a vendor's lien to secure payment of the promissory note.

(3)  The Bank waived its claim that the Wittenbergs redeemed the property.

(4)  The Bank may not prosecute claims under the Declaratory Judgments Act; rather, this action should be filed as a trespass-to-try-title.

In its response to Stockdick's motion, and with specific reference to Stockdick's contention that execution and delivery of the deed did not result in redemption, the Bank argued, inter alia, that fact issues on its affirmative defenses of estoppel-by-deed and estoppel generally preclude summary judgment.[4]  The trial court granted Stockdick's motion, denied the Bank's motion, and rendered a take-nothing judgment against the Bank.

Following disposition of both motions for summary judgment, the trial court granted the Bank's motion to supplement its pleadings. The Bank filed a second supplement to its original petition and included the following allegations, in relevant part:

- The Bank has superior right to $335,767.52, constituting the excess proceeds after a tax sale of the property to Stockdick.  Also, equity demands return of the excess proceeds to the Bank.

- The Texas Tax Code sets forth the statutory priorities for payment of excess proceeds, and the Bank is a qualified lien holder and former owner as prescribed by the statute.

- The Bank is entitled to a hearing on its petition to recover excess proceeds under the following theories of recovery: money had and received; restitution; unjust enrichment; constructive trust; and conversion.

The trial court severed these new claims, and all matters pertaining to allocation of proceeds from the tax sale are now pending in the tax court.[5]

---

[3] *See* Tex. Tax Code Ann. § 34.21 (West Supp. 2011).

[4] The Bank filed a first supplemental petition in which it pleaded the affirmative defenses of estoppel-by-deed and estoppel generally.

[5] We confine our analysis and disposition in this case to whether the Bank's lien was revived through redemption under relevant provisions in the Tax Code or through the equitable doctrine of quasi-estoppel.

4

## II. ISSUES

In its original brief, the Bank raises three principal issues: (1) the trial court erred by denying the Banks's motion for summary judgment because the Wittenbergs redeemed the property and the Bank's mortgage lien was reinstated; (2) the trial court erred by granting Stockdick's motion for summary judgment because redemption occurred after the tax sale and the Bank's mortgage lien was reinstated; and (3) there are material fact issues pertaining to whether the property was redeemed.

In its original brief, the Bank raised several sub-issues which are rendered moot by our disposition of the Bank's first two issues. On appeal, the Bank contends there are fact issues pertaining to its affirmative defense of quasi-estoppel. However, as explained below, the Bank did not sufficiently present or argue the affirmative defense of quasi-estoppel in its response to Stockdick's motion for summary judgment. The Bank argued, inter alia, that Stockdick's execution of a quitclaim deed to the Wittenbergs and retention of sums paid to redeem the property implicate the equitable doctrines of estoppel-by-deed and estoppel generally. On appeal, the Bank does not emphasize its estoppel-by-deed[6] argument, and we conclude it is not applicable because the rights and duties of parties involved in delinquent tax foreclosure and redemption are uniquely controlled by relevant provisions of the Tax Code.[7] We address quasi-estoppel because our dissenting colleague heavily relies on this equitable doctrine to support her conclusion that the trial court's summary judgment in favor of Stockdick should be reversed.

## III. STANDARD OF REVIEW

Relative to a traditional motion for summary judgment, if the movant's evidence conclusively establishes the right to judgment as a matter of law, the burden shifts to the

---

[6] The defense of estoppel-by-deed is similar to the doctrine of after-acquired-title and precludes a grantor from asserting an interest in previously conveyed property. *See, e.g.*, *Duhig v. Peavey-Moore Lumber Co.*, 135 Tex. 503, 507–08, 144 S.W.2d 878, 880–81 (1940); *Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied).

[7] A purchaser at tax sale does not possess legal title to convey upon redemption; if the owner redeems the property, it is restored to status quo ante. *See UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 606–07 (Tex. App.—Corpus Christi 2005, pet. denied).

nonmovant to raise a genuine issue of material fact which would defeat summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our *de novo* review of a trial court's summary judgment, we consider all evidence in the light most favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

We review both the trial court's grant of Stockdick's motion for summary judgment and denial of the Bank's motion because both parties sought final summary judgment. *See CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam). Procedurally, we first consider the merits of Stockdick's motion. *See Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.). In reviewing the trial court's rulings on cross-motions, we must consider all summary-judgment evidence, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co.*, 22 S.W.3d at 872. When both parties move for summary judgment, each party has the burden and neither will prevail solely because the other party failed to discharge its burden. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242, 247 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

## IV. ANALYSIS

This is a case of first impression which implicitly presents the following issue: Whether execution of a promissory note as consideration for redemption fulfills the requirements of section 34.21 of the Texas Tax Code.

6

Our review of provisions in the Tax Code that govern foreclosure and sale of property for failure to pay taxes and procedures for redemption after a tax sale reveals the State's strong public policy of compelling timely payment of property taxes. Mortgages and liens are extinguished when a taxing authority forecloses for non-payment and sells the property. However, the purchaser at a tax sale must provide opportunity for the owner to redeem the property. Holders of mortgages and liens face the prospect that their interests will not be revived if the property is not redeemed. Statutory owners (including lien holders) may redeem property sold at tax sale to a purchaser other than a taxing entity by timely reimbursing all amounts paid by the purchaser plus a premium amounting to twenty-five percent, or in some cases, fifty percent, of the purchase price. *See* Tex. Tax Code Ann. § 34.21(a) (West Supp. 2011)[8]; *see also UMLIC VP*, 176 S.W.3d at 607–08 (holding entity which had deed of trust on land sold at tax sale had right to redeem property).

## A.    Promissory note insufficient as consideration for redemption under section 34.21

Disposition of the core issue in this case turns on whether the Wittenbergs fulfilled the "paying" requirement in section 34.21(a).[9]   Tex. Tax Code Ann. § 34.21(a). Therefore, we begin our analysis by focusing on the plain meaning of applicable statutory language:

> (a) The owner of real property sold at a tax sale to a purchaser other than a taxing unit that was used as the residence homestead of the owner . . . may redeem the property on or before the second anniversary of the date on which the purchaser's deed is filed for record by *paying* the purchaser the amount the purchaser bid for the property . . . plus a redemption premium of 25 percent of the aggregate total if the property is redeemed during the first year of the redemption period. . . .

---

[8] See footnote 9 for explanation regarding citation to version of section 34.21 available in the 2011 statutory supplement.

[9] There is no dispute that the Wittenbergs failed to remit the amount due under the promissory note, and redemption is not accomplished if an owner fails to remit the amount prescribed under the statute. However, the non-payment of premium issue is subsumed by our conclusion regarding the validity of a promissory note as consideration for redemption.

. . .

> (f) The owner of real property sold at a tax sale may redeem the real property by *paying* the required amount as prescribed by this section to the assessor-collector for the county in which the property was sold, if the owner of the real property makes an affidavit stating:
>
> > (1) that the period in which the owner's right of redemption must be exercised has not expired; and
> >
> > (2) . . . that the owner and the purchaser cannot agree on the amount of *redemption money* due, or that the purchaser refuses to give the owner a quitclaim deed to the property.
>
> (f-1) An assessor-collector who receives an affidavit and *payment* under Subsection (f) shall accept that the assertions set out in the affidavit are true and correct. The assessor-collector receiving the *payment* shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed. The assessor-collector shall on demand *pay the money received* by the assessor-collector to the purchaser.[10]

*Id.* § 34.21 (emphasis added).

In its original brief, the Bank contends the Wittenbergs fulfilled all statutory requirements to redeem the property.[11] The Bank also contends substantial compliance with the statute is sufficient, but the parties have not cited, and our research has not revealed, any binding authority directly addressing this question. Accordingly, we presume for the sake of argument that the Wittenbergs were required to substantially comply with section 34.21.

---

[10] The redemption period for the Wittenbergs expired on March 20, 2010, the second anniversary of the date on which the purchaser's deed was filed for record. The versions of subsections (f) and (f-1) quoted here apply to redemptions that take place on or after September 1, 2009. *See* Act of May 21, 2009, 81st Leg., R.S., ch. 374, §§ 2, 3, 2009 Tex. Gen. Laws 913, 914. Relative to redemptions that occurred between June 5, 2007 and August 31, 2009, there was no subsection (f-1), and the text of subsection (f) was different; however, the differences in these two versions are not material to statutory construction responsive to the issue in this case. Accordingly, the current version is cited.

[11] Conversely, in its response to Stockdick's motion for summary judgment, the Bank argued there is no statutory authority for Stockdick to retain a vendor's lien and suggested section 34.21(f) specifies that the tax-sale purchaser must grant a quitclaim deed without reservations.

8

Stockdick contends the property was not redeemed because the Wittenbergs did not pay statutorily prescribed redemption premium. The Legislature did not define the terms "paying" or "pay." Moreover, the parties have not cited, and we have not identified, any Texas authority addressing the textual meaning of the words "paying" or "pay" or whether execution of a promissory note in favor of the purchaser constitutes "paying" within the meaning of this statute. Accordingly, disposition of this appeal necessarily involves interpretation of the word "paying" in section 34.21(a).[12] In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we ascertain that intent from the language in the statute and should not look to extraneous matters to glean the Legislature's intent. *Id*. If the language is unambiguous, we adopt the interpretation supported by the plain meaning of the words. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain language chosen by the Legislature. *See id*. (quoting *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985)).

Consequently, we construe provisions based on ordinary meaning of the words. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006). The infinitive "to pay" has various meanings in ordinary usage, including both to give money to another and to give to another what is due. *See* Webster's Third New Int'l Dictionary 1659 (1993 ed.) (stating various definitions for "to pay," including "to . . . discharge an obligation to: make due return to" and "to make any agreed disposal or transfer of (money)").

Our construction of the word "paying" in subsection (a) of section 34.21 is informed by language in subsections (f) and (f-1). Under the latter subsections, if the owner and purchaser do not agree on the redemption amount or if the purchaser refuses to

---

[12] The right of redemption under section 34.21(a) is also expressed in article 8, section 13 of the Texas Constitution. *See* Tex. Const. art. 8, § 13. The relevant language is substantially similar; however, the Bank has not adverted to a constitutional right of redemption.

give the owner a quitclaim deed, the owner may redeem the property by "paying" the redemption amount to the assessor-collector for the county in which the property was sold. *See* Tex. Tax Code Ann. § 34.21(f), (f-1). Significantly, in subsection (f), the Legislature refers to the redemption amount to be paid under subsection (a) as "the amount of *redemption money due*." *Id.* § 34.21(f) (emphasis added). In addition, after the owner has paid the assessor-collector, the assessor-collector shall give the owner a signed receipt and "shall on demand *pay the money received* by the assessor-collector to the purchaser." *Id.* § 34.21(f-1) (emphasis added). If the owner could "pay" the assessor-collector by signing a promissory note then the assessor-collector would not *receive* any money.

We acknowledge the rule that "statutes which give the right to redeem are to be regarded favorably and construed with liberality." *Buckholts v. Alsup*, 56 S.W.2d 301, 305 (Tex. Civ. App.—Texarkana 1932, writ ref'd). Following this admonition, we construe section 34.21(a) liberally. However, we may not engage in liberal construction as a license to contradict the plain meaning of the statute. *See State v. PR Investments*, 180 S.W.3d 654, 665 (Tex. App.—Houston [14th Dist.] 2005) (en banc), *aff'd*, 251 S.W.3d 472 (Tex. 2008).

To support its argument that the redemption amount need not be paid in cash, the Bank relies on *Jensen v. Covington*, 234 S.W.3d 198, 206–07 (Tex. App.—Waco 2007, pet. denied). But the court in *Jensen* did not address the plain meaning of the term "paying" in section 34.21 or whether a promissory note in favor of the purchaser constitutes "paying." Instead, the *Jensen* court concluded that tender of the redemption amount was sufficient for compliance with section 34.21. *See id.* The court decided whether the tender in that case was sufficient—not whether payment pursuant to promissory note effected a redemption. *See id.* The *Jensen* case is not on point.

Stockdick bore the burden of overcoming the presumption that redemption was effective. *See Gonzalez v. Razi*, 338 S.W.3d 167, 171 (Tex. App.—Houston [1st Dist.] 2011, pet. filed). The undisputed summary-judgment evidence militates the legal

conclusion that the Wittenbergs failed to redeem the property. The Wittenbergs wholly defaulted on the promissory note and failed to fulfill their statutory obligation to remit all sums required to redeem the property. Under our interpretation and application of the Tax Code to undisputed facts, Stockdick has fulfilled its burden. Accordingly, we hold a promissory note does not constitute "redemption money" or satisfy the requirement of "paying" sums required to be paid under sections 34.21(a) of the Tax Code. The Bank's first two issues are overruled.

## B. The Bank failed to raise quasi-estoppel

In its third issue, the Bank contends there are fact issues precluding the trial court's grant of summary judgment in favor of Stockdick. As previously explained, all sub-issues pertaining to whether the property was redeemed by the Wittenbergs are rendered moot by our disposition of the Bank's first two issues. We address the Bank's quasi-estoppel[13] arguments in order to respond to our dissenting colleague's concerns,[14]

---

[13] The law recognizes at least two independent doctrines of estoppel: equitable estoppel and quasi-estoppel. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied). Similar to equitable estoppel, quasi-estoppel requires mutuality of parties; the doctrine may not be asserted by or against a "stranger" to the transaction that gave rise to the estoppel. *See Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 882 (N.C. 2004); *see also Swilley v. McCain*, 374 S.W.2d 871, 875–76 (Tex. 1964). The Bank argues that it had no knowledge regarding the Wittenbergs' attempt to redeem the property and further denies any suggestion that it had an opportunity to redeem the property before it filed this action for declaratory relief. Accordingly, the Bank admits it was a stranger to the tax sale, the Wittenbergs' attempt to redeem the property, and foreclosure proceedings. Consequently, even if the Bank had properly presented and argued quasi-estoppel before the trial court, we question whether it applies to the undisputed facts in this case. Our dissenting colleague cites no Texas authority supporting the proposition that purported inconsistent conduct by party A (Stockdick) toward party B (the Wittenbergs) will support the equitable remedy of quasi-estoppel advanced by party C (the Bank) when party C is admittedly a stranger to the transaction between parties A and B.

[14] Our dissenting colleague holds fast to the conclusion that the summary-judgment evidence raises an issue regarding whether Stockdick, through language in the quitclaim deed, "took the position in the Deed that the Wittenbergs had redeemed the Property in December 2007." The dissent labors to identify a fact issue supporting quasi-estoppel relative to the Bank's lien by construing language in one of several conveyance documents executed between Stockdick and the Wittenbergs. After supplying dictionary definitions and case authority construing the words "pursuant to," our colleague opines that the deed is ambiguous regarding whether Stockdick and the Wittenbergs intended a present redemption, without payment of all sums due under the contemporaneously signed promissory note or without payment of all sums required to be paid under the Tax Code. Under this construction of language in the quitclaim deed, there is no impediment for our colleague to reverse the trial court's judgment with the conclusion that there is a fact issue on whether Stockdick and the Wittenbergs intended a present

11

and with due consideration for the maxim that equity intervenes when the law provides no remedy. *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007) (equitable remedies apply only when there is no remedy at law).

The Bank failed to present argument and evidence sufficient for this court to consider its affirmative defense of quasi-estoppel.[15]  After Stockdick filed a motion for

---

redemption without payment of the amount due on the promissory note.  Of course, this legal conclusion would contravene the panel's unanimous conclusion that the Wittenbergs did not redeem the property because they failed to comply with relevant provisions of the Tax Code.  Ostensibly, our colleague construes the language to determine the intent of **both** parties to the conveyance documents.  However, our colleague's analysis ends with the conclusion that "the Deed is reasonably susceptible to more than one interpretation and thus is ambiguous as to whether **Stockdick** took the position that the Deed effected a redemption that occurred in December 2007." (emphasis added).  The dissent fails to recognize the incongruity of finding a fact issue on whether Stockdick "took the position" that the Wittenbergs redeemed the property without paying the required redemption premium.  Apparently, the dissent finds no analytical impediment in juxtaposing legal construction of conveyance documents to determine the intent of the two parties to that transaction with the separate question regarding whether Stockdick's conduct requires invocation of the equitable doctrine of quasi-estoppel.  In search of a fact issue which contravenes the trial court's summary judgment, the dissent engages in mere sophistry by suggesting Stockdick would ever "take the position" that redemption occurred without payment of redemption premium.  This entire dispute was germinated because of Stockdick's insistence that it is entitled to receive redemption premium before relinquishing its statutory tax title.

[15] The dissent also suggests "a genuine fact issue exists as to whether it would be unconscionable to allow Stockdick to maintain that no redemption occurred . . . ."  However, the Bank did not mention the word "unconscionable" in Section III of  its response to Stockdick's motion for summary judgment which was entitled "Estoppel by Deed; Estoppel Generally."  In Section IV, entitled "Stockdick Should Not Be Allowed a Windfall Above and Beyond the Redemption Premium," the Bank used the word "unconscionable" without any argument in support of the affirmative defense of quasi-estoppel.  The word quasi-estoppel was not mentioned in the Bank's motion for summary judgment or in its responses to Stockdick's motion.  Moreover, even if the Bank had sufficiently raised quasi-estoppel when this case was pending in the trial court, Stockdick's conduct was not unconscionable as a matter of law.  Under express provisions of the Tax Code, Stockdick was entitled to defend its tax title after the Wittenbergs defaulted on the promissory note.  First, under the Tax Code, the Bank's lien was extinguished on the day Stockdick purchased the property at the tax sale.  *See* Tex. Tax Code Ann. §33.95 (West 2008).  Second, if Stockdick fulfills all statutory predicates and follows all procedures responsive to an owner's right of redemption, subject to the right of redemption, it is the legislative intent and public policy of this State that Stockdick should receive title to the property free and clear of all liens.  *Id.* §§ 34.01(n) (West 2008), 34.21(a), (e), (f), (j).  Third, as a tax-sale purchaser, Stockdick is entitled to full reimbursement of the amount it paid at the tax sale plus twenty-five percent redemption premium.  *See id.* § 34.21(a).  Fourth, the Wittenbergs defaulted on their promise to pay redemption premium; therefore, Stockdick was contractually entitled to retain $370,000 and foreclose. Fifth, there is no summary-judgment evidence that Stockdick refused or obstructed the Bank from exercise of its right (under the Tax Code) to protect its lien.  Sixth, the purchaser at a tax sale is statutorily authorized to defend its tax title, subject to the right of redemption, until expiration of the two-year period from the date of the tax sale.  *See id.*  It is axiomatic that one does not engage in unconscionable conduct by lawfully defending and protecting statutory rights.  Accordingly, relative to Stockdick's potential benefits and obligations under the Tax Code, it was not

12

summary judgment, the Bank supplemented its petition to include the counter-affirmative defenses of estoppel-by-deed and estoppel generally. In its response to Stockdick's motion for summary judgment, the Bank did not specifically mention the word "quasi-estoppel." The Bank's estoppel defense was stated as follows:

> Defendant Stockdick has now taken title to the property, including an equity position of $169,721, in full satisfaction of its rights against the prior owners under the accord and satisfaction agreement. The doctrine of estoppel by deed bars any attempt by Stockdick to deny its Quitclaim Deed (redemption deed) to the prior owners. *Gutierrez v. Rodriguez*[,] *supra*, 30 S.W.3d at 561 (A party cannot accept the benefits of a deed and then attack it)[.]

> The doctrine of estoppel, generally, applies to Stockdick's attempt to take the benefits of its accord and satisfaction agreement (including title to the property and a $169,721 equity position), and then deny the redemption and its own Quitclaim Deed. See *Carle v. Carle*, *supra*, 234 S.W.2d at 1004 (A party cannot accept the benefits of a judgment and then attack it)[.]

When a nonmovant asserts a counter-affirmative defense, it must present argument and summary-judgment evidence to raise a fact issue for each element of this defense. *See Hofstetter v. Loya Ins. Co.*, No. 01-10-00104-CV, 2011 WL 1631938, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, pet. denied) (mem. op.); *Rabe v. Dillard's Inc.*, 214 S.W.3d 767, 768 (Tex. App.—Dallas 2007, no pet.).[16] Here, the Bank did not

---

inconsistent or unconscionable for Stockdick to accept the statutory benefits acquired at the tax sale then defend its tax title against the Bank's claim that the property was redeemed. *See id.* §§ 33.95, 34.21. Relative to its relationship with the Wittenbergs, under the terms of conveyance documents, Stockdick did not engage in inconsistent or unconscionable conduct by demanding reimbursement of $370,000 and payment of $92,000 as redemption premium. Relative to the Bank, it is undisputed that Stockdick did not take any action or engage in any conduct (other than purchasing the property at a tax sale) that impaired the Bank from protecting its lien priority by redeeming the property. Relative to the Bank's interest in excess proceeds from the tax sale, we agree that Stockdick is acting inconsistently by contending the property was not redeemed while retaining possession of the amount tendered as partial payment for redemption. However, as indicated above, we do not agree that Stockdick's conduct as purchaser at a tax sale, and as a participant in the Wittenbergs' attempt to redeem the property, was unconscionable. Under the above tax code provisions, it is the public policy of Texas for a purchaser at a tax sale to retain title if the property is not timely and properly redeemed. Finally, our dissenting colleague should not be concerned about the dispute regarding lien priorities or allocation of excess proceeds from the tax sale. All of those issues were severed from this case.

[16] Our dissenting colleague mistakenly relies on several cases for the proposition that pleading estoppel generally is sufficient to raise the affirmative defense of quasi-estoppel in a summary-judgment

present or argue all of the elements of the quasi-estoppel affirmative defense in its response to Stockdick's motion. Consequently, it failed to raise any fact issues whatsoever on this defense. Thus, unlike our dissenting colleague, we conclude that the Bank failed to sufficiently present and argue quasi-estoppel in the trial court, and we may not consider arguments raised for the first time on appeal. *See* Tex. R. Civ. P. 166a(c) (movant must "state the specific grounds therefor"); *Kelly v. Brown*, 260 S.W.3d 212, 216 (Tex. App.—Dallas 2008, pet. denied) (explaining that to preserve grounds for summary judgment, a party must raise them in the summary-judgment proceeding).[17] The Bank's third issue is overruled.[18]

proceeding. *See* 14-09-00617-CV (Frost, J., dissenting), at n.9. Our colleague refers to *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 155–56 & n.1 (Tex. 2004), suggesting that the "Bank's discussion of estoppel was sufficient to raise the affirmative defense of quasi-estoppel." However, the court was referring to sufficiency of pleadings and concluded that "these allegations raise the defense of equitable estoppel." *Id.* The cases cited by the dissent may support the proposition that mere mention of the word "estoppel" in pleadings is sufficient to raise quasi-estoppel in the context of jury or bench trials. We decline to extend this rule in the context of summary-judgment proceedings. The dissent also relies on *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306 (Tex. 2009). However, the Supreme Court in *Timpte* reminds the reader that a trial court cannot grant a motion for summary judgment on grounds not presented in the motion. *Id.* at 310–11 (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W. 3d 193, 204 (Tex. 2002)); *see also* Tex. R. Civ. P. 166a(c) (providing that issues not raised in a "written motion, answer or other response *shall* not be considered on appeal as grounds for reversal." (emphasis added)). In contrast with the Bank's insufficient pleading and presentment of quasi-estoppel as an affirmative defense in this case, the Court in *Timpte* concluded that the motion "unambiguously set out the elements of Gish's design defect claim." *Timpte*, 286 S.W.3d at 311.

[17] Relative to our dissenting colleague's concerns, we note that summary judgment may not be affirmed on a ground not presented to the trial court. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010). "[T]o allow new grounds for a summary judgment to be urged on appeal . . . without the trial court having the opportunity to consider and rule on such grounds[] would be contrary to the provision of Tex. R. Civ. P. 166–A(c) authorizing summary judgment 'on the issues as expressly set out in the motion, or in an answer or any other response.'" *Bickers v. State*, 646 S.W.2d 668, 670 (Tex. App.—Dallas 1983, no writ). The Bank failed to expressly present its affirmative defense by stating each ground on which its motion was based. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (plurality opinion). The motion must "stand or fall on the grounds expressly presented." *Id.*

In responding to Stockdick's motion for summary judgment, the nonmovant—here, the Bank—was required to provide summary-judgment evidence to raise a fact issue for each element of the counter-affirmative defense. *See Hofstetter*, 2011 WL 1631938, at *2; *Rabe*, 214 S.W.3d at 768; *see also Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996) ("An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish 'an independent reason why the plaintiff should not recover.'" (citation omitted)). Specifically, to support its claim, the Bank was required to plead and establish a fact issue regarding both elements of quasi-estoppel: conduct that is inconsistent **and unconscionable**. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864

14

## V. CONCLUSION

For all the reasons described above, we affirm the trial court's grant of summary judgment in favor of Stockdick and denial of the Bank's motion for summary judgment.


/s/    Charles W. Seymore
Justice


Panel on Rehearing consists of Chief Justice Hedges and Justices Frost and Seymore. (Frost, J., dissenting).

---

(Tex. 2000); *Rodriguez v. Villareal*, 314 S.W.3d 636, 643 (Tex. App.—Houston [14th Dist.] 2010 no pet.); *see also Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765–66 (Tex. App.—Texarkana 1992, writ denied). Consequently, the trial court did not consider argument or evidence sufficient to rule on the merits of the Bank's quasi-estoppel defense.

[18] Because we conclude the trial court properly granted summary judgment against the Bank and in favor of Stockdick, we need not consider whether the relief sought by the Bank is available under the Declaratory Judgments Act.