**Affirmed and Majority and Dissenting Opinions filed August 11, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00361-CV

**MICHAEL JOE SORRELL AND SORRELL FAMILY LTD. PARTNERS, Appellants**

**V.**

**ESTATE OF BENJAMIN HARDY CARLTON, III, BY AND THROUGH ITS INDEPENDENT ADMINISTRATRIX DARLENE BARTON, Appellee**

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 70579**

## D I S S E N T I N G   O P I N I O N

In this appeal from a bench trial, our chief task is to apply the plain words of a real-property redemption statute — Tax Code section 34.21 — to determine if the former property owner satisfied the requirements to redeem the property after a tax sale. The trial court found that the former owner successfully redeemed. But, the trial evidence conclusively proves that the former owner did not unconditionally

tender the full redemption amount by the redemption deadline and that the former owner did not substantially comply with section 34.21. For these reasons, this court should reverse and render judgment that the former owner take nothing. Because the court instead affirms, I respectfully dissent.

**Redemption Under Tax Code Section 34.21**

Appellants/defendants Michael Joe Sorrell and Sorrell Family, Ltd. Partners (hereinafter the "Sorrell Parties") appeal the trial court's judgment in favor of appellee/plaintiff the Estate of Benjamin Hardy Carlton, III, by and through its Independent Administratrix Darlene Barton (the "Estate") in the Estate's suit seeking a declaratory judgment that the Estate redeemed the approximately three-acre tract of land in question (the "Property") that the Sorrell Parties purchased at a tax sale. After a bench trial, the trial court determined that the Estate had redeemed the Property under Tax Code section 34.21 based on the court's conclusions that the Estate tendered full compensation during the redemption period and that the Estate substantially complied with the statute.

Tax Code section 34.21, entitled "Right of Redemption," provides in pertinent part:

> (a) The owner of real property sold at a tax sale to a purchaser other than a taxing unit that was used as the residence homestead of the owner or that was land designated for agricultural use when the suit or the application for the warrant was filed, or the owner of a mineral interest sold at a tax sale to a purchaser other than a taxing unit, may redeem the property on or before the second anniversary of the date on which the purchaser's deed is filed for record by paying the purchaser the amount the purchaser bid for the property, the amount of the deed recording fee, and the amount paid by the purchaser as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total if the property is redeemed during the first year of the redemption period or 50 percent of the aggregate total if the property is redeemed during the second year of the redemption period.

2

. . .

(e) The owner of real property sold at a tax sale other than property that was used as the residence homestead of the owner or that was land designated for agricultural use when the suit or the application for the warrant was filed, or that is a mineral interest, may redeem the property in the same manner and by paying the same amounts as prescribed by Subsection (a), (b), (c), or (d), as applicable, except that:

(1) the owner's right of redemption may be exercised not later than the 180th day following the date on which the purchaser's or taxing unit's deed is filed for record; and

(2) the redemption premium payable by the owner to a purchaser other than a taxing unit may not exceed 25 percent.

(f) The owner of real property sold at a tax sale may redeem the real property by paying the required amount as prescribed by this section to the assessor-collector for the county in which the property was sold, if the owner of the real property makes an affidavit stating:

(1) that the period in which the owner's right of redemption must be exercised has not expired; and

(2) that the owner has made diligent search in the county in which the property is located for the purchaser at the tax sale or for the purchaser at resale, and has failed to find the purchaser, that the purchaser is not a resident of the county in which the property is located, that the owner and the purchaser cannot agree on the amount of redemption money due, or that the purchaser refuses to give the owner a quitclaim deed to the property.

(f-1) An assessor-collector who receives an affidavit and payment under Subsection (f) shall accept that the assertions set out in the affidavit are true and correct. The assessor-collector receiving the payment shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed. The assessor-collector shall on demand pay the money received by the assessor-collector to the purchaser. An assessor-collector is not liable to any person for performing the assessor-collector's duties under this subsection in reliance on the assertions contained in an affidavit.

. . .

(i) The owner of property who is entitled to redeem the property under this section may request that the purchaser of the property, or the taxing

unit to which the property was bid off, provide that owner a written itemization of all amounts spent by the purchaser or taxing unit in costs on the property. The owner must make the request in writing and send the request to the purchaser at the address shown for the purchaser in the purchaser's deed for the property, or to the business address of the collector for the taxing unit, as applicable. The purchaser or the collector shall itemize all amounts spent on the property in costs and deliver the itemization in writing to the owner not later than the 10th day after the date the written request is received. Delivery of the itemization to the owner may be made by depositing the document in the United States mail, postage prepaid, addressed to the owner at the address provided in the owner's written request. Only those amounts included in the itemization provided to the owner may be allowed as costs for purposes of redemption.[1]

In crafting this statute, the Legislature set specific deadlines, provided a formula for determining the redemption amount, and identified the responsibilities of the parties in the redemption process. The statutory regime bespeaks the Legislature's consideration of the needs and interests of the taxing entity, the tax-sale purchaser, and the former property owner. Likewise, the statute's precision and detail reflects clear legislative intent that to get the benefit of statutory redemption, the former property owner must follow the rules. It is the Legislature's prerogative to make the rules. It is the court's obligation to evaluate the record evidence to determine if the former property owner followed those rules.

When reviewing the legal sufficiency of the evidence, this court is to consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.[2] We are to credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[3] We must determine whether the evidence at trial would enable

---

[1] Tax Code Ann. § 34.21 (West, Westlaw through 2015 R.S.).

[2] *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005).

[3] *See id.* at 827.

reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony.[4] Because findings of fact in a bench trial have the same force and dignity as a jury verdict, we are to review them for legal sufficiency of the evidence under the same standards we apply in reviewing a jury's findings.[5] We are to review the trial court's conclusions of law de novo.[6]

### *The Trial Court's Conclusion that the Estate Tendered the Full Redemption Amount During the Statutory Time Period*

To redeem the Property, the Estate was required to "pay" the Sorrell Parties a statutory redemption amount not later than the 180th day following the date on which the Sorrell Parties' deed was filed for record.[7] The applicable statutory redemption amount was "the amount the [Sorrell Parties] bid for the property, the amount of the deed recording fee, and the amount paid by the [Sorrell Parties] as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total."[8] Based on the undisputed evidence and the trial court's findings, the redemption amount was $96,755.61 ("Redemption Amount") and the deadline for the Estate to pay this amount to the Sorrell Parties was August 27, 2012 ("Redemption Deadline").[9] Though section 34.21 requires that the redeeming party "pay" the redemption amount, the Fourteenth Court of Appeals and other courts have held that the payment requirement may be satisfied if the

---

[4] *See id.* at 819.

[5] *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

[6] *Johnston v. McKinney,* 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

[7] *See* Tax Code Ann. § 34.21 (a),(e).

[8] Tax Code Ann. § 34.21 (a),(e).

[9] *See id.* The majority agrees that this sum is the Redemption Amount and that this date is the Redemption Deadline. *See ante* at 6.

5

redeeming party timely tenders funds to the purchaser in the full redemption amount without any conditions on the purchaser's right to possess the funds.[10] This court has noted that, though redemption statutes should be construed liberally in favor of redemption, courts cannot use the doctrine of liberal construction as a license to contradict the plain meaning of section 34.21, which requires full payment of the required redemption amount during the statutory redemption period.[11] In *Bluntson*, this court held that, as a matter of law, no redemption occurred under section 34.21 because the party attempting redemption did not timely tender funds to the purchaser in the redemption amount of $19,081.73 without any conditions on the purchaser's right to possess the funds.[12] The *Bluntson* court concluded there was no redemption as a matter of law even though, during the redemption period, the party attempting redemption made an unconditional tender of $17,687.98 (93% of the required amount) and a conditional tender of the remainder of the redemption amount.[13]

In today's case, the trial court concluded that the Estate tendered the full Redemption Amount to the Sorrell Parties before the Redemption Deadline based on the Estate's August 21, 2012 letter to the Sorrell Parties. In this letter, the Estate enclosed a proposed redemption deed and checks payable to the Sorrell Parties in the amounts of $85,000 (125% of the amount the Sorrell Parties paid for the Property) and $28 (the deed recording fee). The Estate instructed the Sorrell Parties that the checks and deed were delivered to them in trust and that they should not negotiate the checks until after the Sorrell Parties executed the deed and sent the

---

[10] *Bluntson v. Wuensche Servs., Inc.*, 374 S.W.3d 503, 507–08 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

[11] *See id.* at 509; *Deutsche Bank Nat'l Trust Co. v. Stockdick Land Co.,* 367 S.W.3d 308, 315 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

[12] *Bluntson*, 374 S.W.3d at 505–08.

[13] *Id.*

deed back to the Estate. The Estate's counsel stated: "If there are any more claimed expenses, please notify me immediately and such funds will be paid, upon review." Presuming for the sake of argument that the Estate unconditionally tendered $85,028 to the Sorrell Parties,[14] under the letter's unambiguous text, the Estate did not unconditionally tender an amount greater than $85,028.[15]

To tender payment, the Estate had to relinquish possession of the amount of money in question for a sufficient time and under such circumstances as to enable the Sorrell Parties, without any special effort on their part, to acquire possession of the money.[16] The Estate said it would pay in the future any additional expenses that the Sorrell Parties brought to the Estate's attention "upon review." Neither in this statement nor in any other part of the letter did the Estate relinquish possession of any money to cover these expenses. As a matter of law, the Estate did not tender an amount greater than $85,028 because it did not relinquish possession of an amount greater than this sum by the Redemption Deadline.[17] In addition, the use of the term "upon review" reflects that the Estate would pay these amounts only if, after review of the expense(s) in question, the Estate concluded that the expense(s) were part of the Redemption Amount. Therefore, any promise by the Estate to pay these expenses in the future was conditional and thus insufficient to effect a redemption.[18]

Even presuming that during the redemption period the Estate tendered $85,028 (88% of the Redemption Amount) to the Sorrell Parties without any

---

[14] The trial court found that the Estate tendered $85,028 to the Sorrell Parties in the August 21, 2012 letter. In its fact findings, the trial court did not find that the Estate tendered a higher amount during the redemption period.

[15] *See Bluntson*, 374 S.W.3d at 507–08.

[16] *Id.* at 507.

[17] *See id.*

[18] *See id.*

conditions on their right to possess the funds, the trial evidence conclusively proves that the Estate did not unconditionally tender the full Redemption Amount by the Redemption Deadline. The *Bluntson* precedent mandates that this court reverse the trial court's judgment and render judgment that the Estate take nothing.[19]

### The Trial Court's Conclusion that the Estate Substantially Complied with Tax Code Section 34.21

In Tax Code section 34.21, the Legislature did not address whether substantial compliance with the statute would be enough to effect a redemption. To date, neither the Supreme Court of Texas nor this court has addressed whether a former property owner's substantial compliance with section 34.21 is sufficient to effect a redemption. Although the majority holds that substantial compliance is enough, this holding is unnecessary for two reasons. First, as discussed above, as a matter of law the Estate did not effect a redemption under the *Bluntson* precedent. And, second, as a matter of law the trial evidence shows that the Estate did not substantially comply with section 34.21.

The undisputed trial evidence shows:

- On February 7, 2012, the Sorrell Parties bought the Property at a tax sale for the purchase price of $68,000.

- After buying the Property and before any attempt to redeem the Property, the Sorrell Parties paid $8,694.49 in property taxes on the Property and $682 for insurance on the Property.

- The deed conveying the Property to the Sorrell Parties was filed for record on February 29, 2012, and a deed recording fee of $28 was paid.

- The first action taken by the executrix of the Estate in an attempt to redeem the Property was taken on July 31, 2012, the 153rd day following the date on which the deed to the Sorrell Parties was filed for record.

---

[19] *See id.*

8

- On July 31, 2012, the Estate's lawyer sent a letter to the Sorrell Parties notifying them that the Estate "will be redeeming" the Property and indicating that the deadline for this redemption was the 180th day after February 29, 2012. The Estate's lawyer stated that, as required by law, the Estate would in the future be tendering to the Sorrell Parties the amount they paid for the Property plus 25%. The Estate's lawyer stated that he would be sending the funds in the future; he did not request a written itemization of the amounts the Sorrell Parties had expended in costs on the Property.

- The Estate took no further action to redeem the Property until August 21, 2012, the 174th day following the date on which the deed to the Sorrell Parties was filed for record.

- On August 21, 2012, the Estate's lawyer sent a second letter to the Sorrell Parties enclosing a proposed redemption deed and checks payable to the Sorrell Parties in the amounts of $85,000 (125% of the amount the Sorrell Parties paid for the Property) and $28 (the deed recording fee).

- The Estate instructed the Sorrell Parties that the checks and deed were delivered to them in trust and that they should not negotiate the checks until after the Sorrell Parties had executed and sent the deed to the Estate.

- The Estate stated that, as required by law, the Estate was tendering the amount the Sorrell Parties paid for the Property plus an additional 25% and the deed recording fee. The Estate stated, "If there are any more claimed expenses, please notify me immediately and such funds will be paid, upon review."

- The Estate did not state unequivocally that the expenses would be paid. Nor did the Estate request a written itemization of the amounts the Sorrell Parties spent on the Property.

- The Sorrell Parties retained a lawyer, who sent a letter on August 31, 2012, ten days after the Estate's second letter and the 184th day following the date on which the deed to the Sorrell Parties was filed for record.

- The Sorrell Parties returned the two checks to the Estate, stating that the amount tendered in the attempted redemption was insufficient. The Sorrell Parties notified the Estate that the Sorrell Parties had paid $8,694.49 in taxes on the Property and $682 for insurance.

The Legislature laid out the redemption procedure plainly. Under the unambiguous language of the statute, to calculate the redemption amount, the former owner needs to know the amount, if any, paid by the purchaser as taxes, penalties,

9

interest, and costs on the property.[20]  These amounts often are known only to the purchaser.  If the purchaser fails to disclose these amounts to the former owner voluntarily, the former owner has recourse to subsection (i) of section 34.21.[21] Under this provision, the former owner may send the purchaser a written request that the purchaser provide the former owner a written itemization of all amounts spent by the purchaser in costs on the property.[22]  The purchaser must deliver a written itemization of these amounts to the former owner not later than the tenth day after receiving the written request.[23]  If the purchaser provides a written itemization, then the itemization allows the former owner to calculate and pay or tender payment of the redemption amount.[24]  If the purchaser does not timely respond with a written itemization, the former owner need not include in the calculation of the redemption amount any taxes, penalties, interest, or costs on the property.[25]

The Estate first took action on July 31, 2012, 153 days into the redemption period.  If the Estate had made a written request in its July 31, 2012 letter for a written itemization of all amounts spent by the purchasers in costs on the property, the written itemization would have been due on August 11, 2012 (ten days after receipt on August 1, 2012), allowing the Estate sufficient time to tender unconditionally the Redemption Amount by the Redemption Deadline.  In the July 31, 2012 letter, the Estate did not request a written itemization or anything else from the Sorrell Parties.  Instead, the Estate incorrectly stated that it only needed to tender

---

[20] Tax Code Ann. § 34.21 (a),(e).

[21] *Id*. § 34.21(i).

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*.

125% of the amount paid for the Property.

Six days before the Redemption Deadline, the Estate sent a second letter. Even presuming the Estate unconditionally tendered $85,028 to the Sorrell Parties in that letter, the sum did not include any amount for taxes, penalties, interest, or costs on the property. The record contains no evidence that in the 173 days of the redemption period before the Estate sent this letter that the Estate did anything to determine the Redemption Amount. There is not an iota of evidence that the Estate either formally asked for a written itemization or that the Estate informally inquired as to the amount of the costs. Even in this second letter, there is no request for a written itemization of all amounts spent by the purchasers in costs on the Property.[26] Though the Estate did not request a written itemization, the Estate did ask the Sorrell Parties to immediately "notify" the Estate "[i]f there are any more claimed expenses."[27] Even if the Estate had made a request for written itemization in the August 21, 2012 letter, the Sorrell Parties would not have been required to provide the itemization until ten days later, after the Redemption Deadline.[28] Indeed, apparently treating the August 21, 2012 letter as a request for a written itemization out of excess of caution, the Sorrell Parties itemized these costs in a letter written to the Estate ten days later.

The trial evidence conclusively proves that the Estate did not substantially comply with section 34.21, and therefore, this court should reverse and render a take-

---

[26] *See* Tax Code Ann. § 34.21(i).

[27] The majority concludes that this request for notification of any claimed expenses was a written request for a written itemization of all amounts spent by the purchasers in costs on the Property. *See ante* at 8. But, a request for notification if there are any claimed expenses is not a request for a writing, nor is it a request for an itemization. Notification of the existence of any claimed expenses can be made through oral communication and need not include any itemization of the expenses.

[28] *See id.*

11

nothing judgment without addressing whether substantial compliance applies to this statute.[29]

Today, the majority embraces the analysis of the Tenth Court of Appeals in *Jensen v. Covington*,[30] a case in which, unlike today's case, the former owner made a written request under subsection (i) of section 34.21 for a written itemization of all amounts spent by the purchaser in costs on the property.[31] The *Jensen* court concluded that the former owner tendered the full redemption amount within the redemption period and substantially complied with section 34.21, even though the former owner (1) first took action at 3:00 p.m. on the day of the redemption deadline; (2) did not know the amounts spent by the purchaser in costs on the property; (3) waited until the redemption deadline to make a written request under subsection (i) of section 34.21 for a written itemization; and (4) relied on the purchaser calculating the full redemption amount, confirming to the former owner's satisfaction the amounts of costs spent on the property, executing a quitclaim, and obtaining a check drawn on the former owner's escrow account sometime between 3:00 p.m. and midnight on the redemption deadline after first receiving notice at 3:00 p.m. that day.[32]

The facts of *Jensen* differ from the facts before us today.[33] As the dissenting justice in *Jensen* pointed out, the *Jensen* court failed to apply the unambiguous language of subsection (i) of section 34.21, which gives the purchaser ten days to

---

[29] *See Deutsche Bank Nat'l Trust Co.,* 367 S.W.3d at 314–15; *Burd v. Armistead*, 982 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

[30] *See* 234 S.W.3d 198, 203 (Tex. App.—Waco 2007, pet. denied).

[31] *See id*. at 201.

[32] *See id*. at 201–02.

[33] *See id*.

respond to a request for a written itemization.[34] The *Jensen* court held that the purchaser "violated his statutory duty to provide [the former owner] with the itemization]" by not providing the itemization on the day it was requested, rather than within the ten-day period allowed under the plain language of the statute.[35] The *Jensen* court appeared to base this holding on a liberal construction of the statute in favor of redemption.[36] Though the Tenth Court of Appeals apparently allows this liberal construction to be used to undercut the unambiguous text of section 34.21, the Fourteenth Court of Appeals has eschewed that approach.[37] Under this court's precedent, a liberal construction in favor of redemption cannot be used as a license to contradict the plain meaning of section 34.21.[38]

In addition, the *Jensen* court found that a redemption had been effected on the redemption deadline, even though the former owner did not unconditionally tender the full redemption amount during the redemption period; instead, the former owner invited the purchaser to stop by the former owner's lawyer's office on the deadline date to confirm to the lawyer the amount of costs spent on the property.[39] The would-be redeeming party conditioned the last-minute alleged tender on the purchaser's confirmation of the amount of costs spent on the property to the satisfaction of the former owner's lawyer.[40] Thus, this part of *Jensen* conflicts with *Bluntson*'s holding that the former owner must make a timely tender of funds to the purchaser in the full redemption amount without any conditions on the purchaser's right to possess the

---

[34] *See id.* at 205, n.3; *id.* at 208 (Gray, C.J., dissenting).

[35] *See* Tax Code Ann. § 34.21(i); *Jensen*, 234 S.W.3d 201–202, 205 & n.3.

[36] *Jensen*, 234 S.W.3d at 205, n.3.

[37] *See Bluntson*, 374 S.W.3d at 509; *Deutsche Bank Nat'l Trust Co.,* 367 S.W.3d at 315.

[38] *See Bluntson*, 374 S.W.3d at 509; *Deutsche Bank Nat'l Trust Co.,* 367 S.W.3d at 315.

[39] *Jensen*, 234 S.W.3d at 201.

[40] *See id.*

funds.[41]

*Jensen* is not on point. And, *Jensen* clashes with this court's binding precedent.[42] This court should not follow *Jensen*.

### *Conclusion*

The trial evidence conclusively proves that the Estate did not unconditionally tender the full Redemption Amount by the Redemption Deadline. Even presuming that the substantial-compliance doctrine applies, the trial evidence conclusively proves that the Estate did not substantially comply with Tax Code section 34.21. For these reasons, this court should reverse and render judgment that the Estate take nothing.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise. (Boyce, J., majority).

---

[41] *Bluntson*, 374 S.W.3d at 507–08.

[42] *See id.* at 507–09; *Deutsche Bank Nat'l Trust Co.,* 367 S.W.3d at 315.